# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## RICHARDSON & ALS. v. SEEVERS' ADM'R.

### JANUARY 5th, 1888.

1. JUDGMENTS—*Effect—Jurisdiction.*—To render judgment binding, court must have jurisdiction of parties as well as of subject matter. Jurisdiction of courts of general powers will be presumed, until contrary is shown. Jurisdiction of courts of limited powers must be affirmatively shown. And the former stand upon same footing with the latter, when not acting within scope of their powers, but under special statutory authority.

2. BANKRUPT COURT—*Jurisdiction—Impeachment of its decrees—Case at bar.*—In this case it appears affirmatively that the U. S. district court sitting in bankrupcy upon the application of P, had no jurisdiction over the lands of R, which had not been surrendered, and against which P, the bankrupt, had no claim. It, however, entered a decree fixing and attaching liens upon the lands of R:

HELD:

   The decree is void, and wherever and whenever called in question, may be so treated.

3. GIFT TO HUSBAND "FOR BENEFIT OF WIFE AND CHILDREN."—*Case at bar.*—Father sold land to sons-in-law, upon agreement that latter should retain one-fourth of purchase money for the benefit of his wife and children as an advancement from the father to them:

HELD:

   This agreement created no trust lien on the land for the benefit of the wife and children. *Waller* v. *Catlett,* 83 Va., 200.

Appeal from two decrees of circuit court of Clarke county, rendered May 16th, 1884, and October 13th, 1885, in the chancery cause wherein A. Moore, Jr., administrator *d. b. n. c. t. a.* of Henry Seevers, deceased, is complainant, and John D. Richardson, Jr., and others are defendants. John Richardson

by agreement of May 2nd, 1848, sold to his sons-in-law, T. P. Pendleton and John D. Richardson, Sr., a tract of land, stating that one-fourth of the purchase money should be retained by the vendees respectively, for the benefit of their wives and children, as advancements from him to them. Pendleton was adjudicated a bankrupt. The district court of the United States sitting in bankruptcy by its decree *in re* Pendleton, on 16th December, 1882, ascertained and adjudged the liens on his half of said tract of land, and in the third class placed a lien in favor of his wife and children, and though neither John D. Richardson nor his land was before the court, yet it proceeded by said decree to ascertain the liens thereon, and placed a lien thereon in favor of his wife and children for the amount of one-fourth of his half of the said purchase money.

This suit was brought as a creditors' suit, to enforce liens upon the lands of said John D. Richardson, Sr., then deceased. Among the liens reported to the court, was the lien which had as aforesaid, been adjudged in favor of his children. The circuit court, at the hearing of this cause, adjudged the decree of the bankrupt court void for want of jurisdiction, but adjudged those children entitled to a lien on said lands, with interest thereon from November 3rd, 1883, instead of from May 2nd, 1848, the date of the agreement which was alleged to have created the charge in their favor. From this decree, John D. Richardson, Jr., and his brother and sister appealed, assigning as errors: 1st, the annulling of the decree of the bankrupt court; 2nd, deciding that their claim did not bear interest until November 3, 1883; whilst the appellees assigned as error as against them, that the court adjudged that the appellants had any lien or charge whatever on the said lands.

*M. McCormick* and *S. J. C. Moore*, for the appellants.

*A. R. Pendleton, McDonald & Moore,* and *H. Conrad,* for the appellees.

LACY, J., delivered the opinion of the court.

This suit was brought to enforce a judgment lien in favor of the appellee against the lands of John D. Richardson, deceased. An account of liens was ordered, taken and reported to the court, and among these a lien in favor of the children of John Richardson for a large amount, aggregating, principle and interest, $21,321 80, as of June 1, 1883, and it is concerning this lien, reported by the commissioner for the consideration of the court, that this controversy has arisen. The history of this claim on the part of the appellants, the children of John D. Richardson, is as follows: On the second day of May, 1848, the father-in-law of John D. Richardson, deceased, made an agreement with the said John D. Richardson and one T. P. Pendleton, another son-in-law, that the said father-in-law, who was John Richardson, agreed to sell to the said sons-in-law large property owned by him, consisting of 870 acres of land and valuable personal property of large amount, at a valuation to be made by certain named persons, which should be the purchase price of the said property. And that the said T. P. Pendleton and John D. Richardson, sons-in-law of the said John Richardson, were first to pay all the debts of the said John Richardson, including $6,000 to be paid to the wife of the said John Richardson, with interest from the date of the contract, to-wit, the second day of May, 1848, to be secured on the lands sold; $6,000 to be paid to T. P. Pendleton, with interest from the second day of May, 1848; " and it was further agreed that after the payment of all the debts and liabilities of the said John Richardson out of the residue of the consideration as aforesaid, one *full* fourth part thereof, *with interest from the said second day of May*, 1848, was to be retained and held by the said Thornton P. Pendleton for the benefit of his wife and children, *as an advancement by said John Richardson to them;* and one other full fourth part thereof, with interest from the second day of May, 1848, *was to be retained by the said John D.*

*Richardson for the benefit of his wife and children, as an advancement by the said John Richardson to them*"; and the other two-fourths to be paid by the said sons-in-law to the said John Richardson, on request, with interest thereon from the said second day of May, 1848. The said contract has been lost or destroyed, and is not produced in the record; but the foregoing, taken from the will of John Richardson, is admitted on all hands to be correct, its terms being recited in full and reiterated in the will. John Richardson died, and T. P. Pendleton and John D. Richardson divided the land. T. P. Pendleton subsequently filed his petition in bankruptcy in the United States district court for the western district of Virginia, in which court all of his property was surrendered.

On the sixteenth day of December, 1882, the said court rendered a decree (in *re* T. P. Pendleton) by which, after proceeding to ascertain and adjudge the liens resting upon the real estate of T. P. Pendleton, bankrupt, involved in the cause, being about 435 acres (as the decree recites) of the Fairfield estate, and upon the remaining portion of said Fairfield estate, being about 435 acres, owned by J. D. Richardson, did order and decree that the said liens binding said two tracts of land were as in the order stated therein. In the third class placing a lien and charge in favor of T. P. Pendleton's wife and children, the said wife and children taking share and share alike, upon the said land at the amount of $20,462 26, with interest on $6,867 22, part thereof, from April 30, 1881, until paid. And the court further adjudged that the shares of the Fairfield estate aforesaid are subject to a lien and charge in favor of the children of J. D. Richardson, on like principles, for $20,462 26, with interest on $6,867 22, part thereof, from April 30, 1881, until paid. And that these amounts severally decreed were liens upon the whole John Richardson land of 870 acres, by virtue of the said contract of May 2, 1848, but that in the enforcement of the same the wife and children of T. P. Pendleton should first subject the T. P. Pendleton share, and the

children of John D. Richardson should first subject the John D. Richardson share, of the said tract of land. And having taken an account of liens on John D. Richardson's land, authorized and empowered the several parties to whom moneys were to be paid under the order to proceed to enforce their claims against the lands of said John D. Richardson, known as a part of Fairfield, as upon a judgment of that court.

This lien so established having been reported by the commissioner in this cause for the judgment of the circuit court of Clarke county, with the remark that "your commissioner does not feel competent to decide the question of the jurisdiction of that court as affecting the questions now before your honors court"; and exception being taken, the circuit court of Clarke herein held, by decree in the cause on the sixteenth of December, 1884, "that the decree of December 16, 1882, of the United States district court in *re* T. P. Pendleton, bankrupt, filed as an exhibit in this cause, is not an adjudication which is binding or estoppel upon the parties to this cause, and is not, therefore, binding to establish any lien in favor of the wife and children of T. P. Pendleton, or the children of J. D. Richardson, on the lands of J. D. Richardson involved in this cause. But the court is further of opinion that under the will of John Richardson, (and his agreement with T. P. Pendleton and J. D. Richardson,) and under the deed of the executrix of John Richardson, a lien exists, and is now especially in favor of the children, of one-fourth, after the payment of John Richardson's debts, as against the lands only of said J. D. Richardson, and not as against the share of Fairfield, received by T. P. Pendleton; the court being of opinion that the wife and children of T. P. Pendleton have no lien under the said papers on the share of Fairfield, received and held (and herein involved) by J. D. Richardson; and ordered in this cause an account of the liens upon the lands of J. D. Richardson involved in this cause; an account of the children of J. D. Richardson entitled to a lien upon his lands; the amount of said lien, and particu-

larly whether the same shall bear interest, and from and to what dates; the court, reserving its opinion as to said interest, adjudging the principal of this lien in favor of J. D. Richardson's children, in conformity to the said commissioner's report, to be $6,867 22 as of May 2, 1848.

Subsequently the court, upon the coming in of this report, adjudged the interest upon this lien in favor of the children of J. D. Richardson, not to run from May 2, 1848, the date of the contract, but that it should run only from the date of the decrees sequestering the Fairfield tract for the benefit of the lien creditors of said John D. Richardson, to-wit: from the third day November, 1883; established the liens on the said John D. Richardson lands, so far as they are set forth in the commissioner's report; reserved certain questions, and ordered a further account and report as to them. From these two decrees the appeal is taken here by the children of John D. Richardson, because, in the first place, the decree of the United States court is set aside; and, in the second place, because the interest is disallowed them on their claim from May 2, 1848, the date of the contract between their father and their grandfather, and the third day of November, 1883, the date of the decrees sequestering the lands of their said father, J. D. Richardson, to the liens of his creditors. And under rule 9 of this court the appellee, Seevers' administrator, assigns errors, first, that there is no valid lien existing at all upon the lands of J. D. Richardson in favor of his children; that John Richardson gave this to his son-in-law as an advancement on account of his wife and children, and never intended as he never provided that it should be paid by J. D. Richardson to any person, but to be kept by him as his own property.

The first question to be considered is whether the circuit court erred in disregarding and treating as null the decree of the United States district court for the Western district of Virginia, rendered on the sixteenth of December, 1882, in *re* Pendleton, bankrupt, in so far as the said decree established

liens on the lands of J. D. Richardson. The decree was rendered in *re* Pendleton, a case arising in said court upon the petition in bankruptcy of said Pendleton. Richardson was not a bankrupt upon his own petition, nor otherwise. While it is clear that the jurisdiction of the said court in bankruptcy extended under the act of congress to all cases and controversies arising between the bankrupt and any creditor or creditors who shall claim any debt or demand under the bankruptcy; to the collection of all the assets of the bankrupt; to the ascertainment and liquidation of the liens and other specific claims thereon; to the adjustment of the various priorities and conflicting interests of all the parties; to the marshaling and disposition of the different funds and assets, so as to secure the rights of all parties, and due distribution of the assets among all the creditors; and to all matters and things to be done *under* and in virtue of the bankruptcy until the final distribution and settlement of the *estate of the bankrupt.* But in this case the court went beyond all this, and in virtue of the bankruptcy of T. P. Pendleton proceeded to the ascertainment and liquidation of the liens and other specific claims upon the lands of J. D. Richardson, another person holding a distinct estate; and disposed of the rights of lien-holders thereon, who were not parties to the proceeding. The act of congress in question in authorizing the disposition of the bankrupt's estate furnishes no authority, grants no power to this end. The only reason assigned for this is that as to some liens the lands of both were bound. The act in question does not, and wisely does not authorize any such proceeding; for, carried to its possible results, the bankruptcy of one insolvent might implead a whole community, either as creditor or debtor. This obviously is beyond the intention as well as the letter of the act.

But it is contended by the learned counsel for the appellants that the district court of the United States is a court of record, whose decision cannot be assailed collaterally; that it is of limited jurisdiction, but within those limits it has as uncontrolled

jurisdiction as any court whatever; that although their juris-
diction be not shown in the pleadings, their judgments are bind-
ing on all the world.   It cannot be denied that a court sitting
in bankruptcy under one act is limited to the terms of the act,
and must exercise only the powers granted, and as such a court
of special and limited jurisdiction; and we consider it to be
well settled that a judgment by that tribunal, without authority
or jurisdiction, or which exceeds or lies without the power of
the court, is necessarily void, and may be shown to be so in
any subsequent or collateral proceeding; and this applies to all
courts whether of superior or of inferior jurisdiction, because
no authority derived from the law can transcend the source
from whence it came.   While the jurisdiction of superior
courts will be presumed in favor of their judgments, unless
plainly beyond the jurisdiction of the tribunals from which
they emanate, it is held that as to the jurisdiction of limited
and inferior tribunals jurisdiction will not be presumed, and
must be shown affirmatively to confer validity on their acts;
and when the facts necessary to give such a tribunal jurisdiction
do not appear on the face of its proceedings, and are not proved
*aliunde*, the whole will be invalid, and may be set aside as a
nullity when called in question in the course of a collateral con-
troversy; and unless a particular jurisdiction shows the matter
to be within its jurisdiction, it must be presumed to be without
it.   Whatever may be the rule as to courts of general powers,
when acting within the scope of those powers, it is well settled
that when they do not, and exercise a special and statutory
authority, their proceedings stand on the same footing with
those of limited and inferior jurisdiction, and will be invalid,
unless the authority on which they are founded has been strictly
pursued.  *Denning* v. *Corwin*, 11 Wend., 647; *Jackson* v. *Esty*,
7 Wend., 148; *Sharp* v. *Speir*, 4 Hill, 76; *Striker* v. *Kelly*, 7
Hill, 11; *Crepps* v. *Durden*, Cowp., 640.

In exercising the powers given by these statutes, said Beards-
ley, J., in delivering the opinion of the court in *Striker* v.

*Kelly, supra,* we exercise powers which do not belong to us as a court of general jurisdiction, and our proceedings are therefore to be treated like those of courts of special and limited jurisdiction.. The extent and nature of a power depend upon the *terms in which it is conferred,* and it will not be enlarged by being delegated to persons who are interested with other and more general powers. And the question in this case is not what is the jurisdiction of the United States district courts generally, but what is that jurisdiction under the bankrupt act of congress in a case in bankruptcy. In the case of *Eaton* v. *Badger,* 33 N. H., 228, 237, Fowler, J., said: "When a court of general jurisdiction has special and summary powers wholly derived from statute, and not according to the course of the common law, and which do not belong to it as a court of general jurisdiction, its judgments are regarded and treated like those of courts of limited and special jurisdiction, and everything necessary to give jurisdiction must appear by the record; while everything will be presumed to be without jurisdiction which does not appear by the record to be within it." *Morse* v. *Presby,* 5 Fost., 302. In *Ransom* v. *Williams,* 2 Wall., 313, the supreme court of the United States applied the principle that a limited authority must appear to have been strictly pursued even when the acts of a superior tribunal are in question. To render a judicial decision binding on the parties, the court must have jurisdiction of *them* as well as of the cause. *The Mary,* 9 Cranch, 126, 144. When the record shows in any court, whether superior or inferior, that the court has proceeded without notice, and without any sufficient excuse or reason for the want of notice, any presumption in its favor is at an end, and it may not only be reversed as erroneous, but be impeached and set aside collaterally as void. *Foster* v. *Glazener,* 27 Ala., 391; *Moore* v. *Starks,* 1 Ohio St., 369; *Hollingsworth* v. *Barbour,* 4 Pet., 475.

The rendition of a judgment against a party not before the court in any way will be as utterly void as though the court

had undertaken to act when the subject-matter was not within its cognizance. *Borden* v. *Fitch*, 15 Johns., 121. This is the rule with reference to all courts, with only this difference: that the jurisdiction of a superior court will be presumed until the contrary appears; whereas an inferior court, and those claiming under its authority, must show that it had jurisdiction. *Propst* v. *Meadows*, 13 Ill., 157. In any court a judgment rendered in a case in which the subject-matter was not within the jurisdiction of the court is void, and the whole proceeding is *coram non judice.* Case of *The Marchelsea*, 10 Coke, 369; *Cox* v. *Thomas*, 9 Gratt., 326. It appears affirmatively in this case that the district court sitting in bankruptcy upon the application of T. P. Pendleton had no jurisdiction over the lands of J. D. Richardson not surrendered in that court, and against which the said bankrupt had no claim. It was, therefore, wanting in jurisdiction of the subject-matter, and its decree fixing and attaching liens upon the same was a void judgment, and may be set aside and disregarded as a nullity, wherever and whenever it may be called in question; and the circuit court did not err in disregarding the same at the suit of a lienholder not a party to the proceedings.

The next assignment by the appellants of error in the decrees appealed from, is that the circuit court disallowed interest on their lien from the date fixed by the contract, May 2, 1848, to November 3, 1883, as has been stated. But as this question depends upon and logically follows the assignment stated above as made by the appellee—that there is no valid lien in favor of the appellants, under the contract in question—we will first consider that question. We have stated the language of this agreement as set forth in the will of John Richardson, and it will be remembered that it is therein provided that it is agreed that one full fourth part thereof, with interest from the said second day of May, 1848, was to be retained by the said John D. Richardson for the benefit of his wife and children, as an advancement by John Richardson to them. These words

have a plain and well-understood signification, and it is admitted and urged on both sides that the agreement in question was drawn by an attorney of great skill and learning in his profession. The transaction was a sale of real estate and other property. The vendor says to the vendee—agrees with him—that he shall retain one-fourth of the purchase money indefinitely. This standing alone would be a gift of the whole sum; but it does not stand alone, it is accompanied with the words "for the benefit of his wife and children," (the daughter and grandchildren of the vendor,) as "an advancement by me to them." Retain means to continue to hold, to keep in possession; and to keep, is a synonym for to retain. "As an advancement by me to them," says the will, reciting the agreement. An advancement is a *gift* by a parent to a child, of the whole or a part of what it is supposed such child will inherit on the death of the parent. Bouv. Law Dict. This is undoubtedly what was intended by both the contracting parties, if their intention is to be derived from the language they have used. The vendor, the father-in-law, gives to the son-in-law a certain part of the purchase money as an advancement to his daughter and her children. Was more intended? It was not set forth. Was a trust intended to be created? One is not hinted at. Was it to be paid to any person? Payment is not mentioned, nor any equivalent language used. But if so, where was this payment to be made? This is not only not provided for, but it is, I think, plainly disaffirmed by the authority to retain the purchase money as an advancement. Keep it, and not pay it to the vendor, was obvious enough; but, so keeping it as an advancement, what is there which makes it a debt, an obligation to pay? There are no agreements to this end. The provision *with interest, from* May 2, 1848, is not used to designate any agreement as to payment, but simply to fix the amount; the agreement being a proportion and not a fixed and ascertained amount. The $6,000 to T. P. Pendleton was to be paid, with interest from that date. The $6,000 was to be paid the

widow, with interest from that date; and the two-fourths to be paid to the vendor as of that date, the day of the transaction, and to carry interest from date. The provision as to interest was apparently used to equalize the proportion, and we find it coupled closely with the word "*full*," full fourth part, indicating such an intention.

We have said that there are no words creating a trust for the benefit of the wife and the children. It is negatived by the words used, "as an advancement from me to them." The words, "for the benefit of his wife and children" do not create a trust; they merely indicate the motive of the gift to the father. *Bain* v. *Buff*, 76 Va., 375; *Leake* v. *Benson*, 29 Gratt., 153; *Penn* v. *Whitehead*, 17 Gratt., 503; *Wallace* v. *Dold*, 3 Leigh, 258; *Stinson* v. *Day*, 1 Rob. (Va.), 435; *Waller* v. *Catlett*, 83 Va., 200. We think there is no lien on the land of John D. Richardson for the benefit of his children, and that the circuit court erred in holding the same to exist against the said land, and for this the said decree must be reversed and annulled. And as this question disposes of the question as to the date from which the interest should run, that question need not be further noticed, and it also disposes in effect of all the questions raised here.

It is not necessary to further review the case here, but the said decree will be reversed for the error stated, and the cause remanded to the said circuit court for further proceedings to be had therein in accordance with this opinion.

DECREE REVERSED.