## 30197. KIBLER *et al. v.* HART.

DECIDED NOVEMBER 20, 1943. REHEARING DENIED DECEMBER 17, 1943.

*M. H. Blackshear,* for plaintiffs in error.
*C. C. Crockett,* contra.

FELTON, J. J. F. Hart sued Paul E. Kibler and Albert Elliott for money had and received, alleging that he sold them a farm in June 1941, and that the agreement between the parties was that

the plaintiff was to pay all the 1941 taxes on the farm, and that he was to receive the government payments on the same, which were $293.84. The jury found for the plaintiff the sum of $263.01 principal, and $21.42 interest. The defendants' motion for a new trial was overruled, and they excepted.

The warranty deed from the plaintiff to the defendants, conveying the land, contained the following provision: "J. F. Hart is to pay State and county taxes for the year 1941, and is to retain all government payments in connection with said farm." The evidence showed that the taxes paid by the plaintiff were $206.39; that the plaintiff received and retained the parity payment of $192.34; that the defendants received a check from the AAA for benefit payments in the sum of $18.61, which was arrived at from the following statement:

```
"Cotton payment ...............................$190.57
 Maximum soil building allotment ...................  130.27
                                                     _____
                                                       320.84
 Deduction for wheat overplanted by J. F. Hart ........   37.12
                                                     _____
 Gross payment of farm ...........................  283.72
 Deduction for administrative costs 7.3% .............   20.71
                                                     _____
 Net payment ....:...............................  263.01
 Construction materials ..........................   94.40
                                                     _____
                                                       168.61
 Payment to Laurens County Terracing Association ....  150.00
                                                     _____
Check received by defendants from AAA ............$ 18.61"
```

If the stipulation in the contract can be said to be ambiguous there was no evidence submitted to the jury throwing any light on what the parties mutually intended it to mean, and the construction is a matter of law for the court. Webster's New International Dictionary defines "retain" as meaning: "To hold or continue to hold in possession or use; to continue to have, use, recognize, etc., to maintain in one's keeping." It gives as antonyms, "lose, surrender, relinquish." Other definitions are: " 'Retain' is defined as to continue to hold, have, use, recognize, etc., and to keep, and

is not synonymous with the word 'take.'" 37 Words & Phrases, 510, citing Kimbell Trust & Savings Bank *v.* Hartford Accident & Indemnity Co., 333 Ill. 318 (164 N. E. 661). "To 'retain' means to hold that which one already owns, and not to lose, part with, or dismiss it, and more definitely means to 'keep back' that which one owns." Featherston *v.* Merrimon, 148 N. C. 199 (61 S. E. 675). " 'Retain' means to keep in possession or hold back. . . He cannot retain that which he does not possess." Cudworth *v.* Bostwick, 69 N. H. 536 (45 Atl. 408). "Retain. To continue to hold, have, use, recognize, etc., not to lose, part with, dismiss or permit to escape; to continue to hold, to keep in possession; Richardson *v.* Seevers, 84 Va. 259 (4 S. E. 712); to hold back; Donahoe *v.* Franks, 199 Fed. 262; to hold or keep that which one already owns, not to lose or part with or dismiss it; to keep; to keep back that which one then owns; to keep in possession, control, use, custody, etc., to keep in possession or hold back." 54 C. J. 738.

The use of the word "retain" requires that the provision in the contract be construed to mean that the grantor in the deed would keep in his possession all payments made by the government which he then actually had in his possession, or which were thereafter paid to him for 1941 benefits. The stipulation is not that the plaintiff was to "receive" all payments from the government, as alleged in the petition, nor did it provide that all payments to become due on the land for any specified length of time would be received for his benefit, or to his use, but simply that he was to "retain" all payments. He cannot retain that which he never had in his possession. The provision apparently provides that taxes should be offset by certain government payments. While the amount of taxes might not be ascertained with certainty in June, it could be ascertained approximately. It would seem that the parity payment could be ascertained at that time with exactness, if in fact it had not already been ascertained and paid. Since the only suggested purpose of retaining the benefit payments was to offset the taxes, it would seem unreasonable to take into consideration any benefits which the parties did not have in mind at the time of the sale, such as terracing, etc. If that were done it would have the effect of influencing the purchaser to forego needed improvements to avoid the effect of paying the bill for the benefits. Nor is it reasonable to construe the agreement as leaving it within

the discretion or will of the purchasers to determine in such large degree how much should be paid the seller. The construction we have placed on the contract is the most equitable, and removes it from the fields of utter uncertainty, speculation, and manipulation. If the contract does not speak the intention of the parties reformation would be a prerequisite to relief.

There is no contention that any of the benefit payments, herein mentioned, were erroneously paid to the defendants in an accounting with them. The evidence demanded a finding for the defendants, and the court erred in overruling the motion for a new trial. It is not necessary to pass on the other questions raised.

*Judgment reversed. Stephens, P. J., and Sutton, J., concur.*