COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:    Judges Kelsey, Alston and Senior Judge Bumgardner
Argued at Alexandria, Virginia


ANNE-LISE QUINN

                                                      MEMORANDUM OPINION[*] BY
v.       Record No. 0851-14-4                    JUDGE RUDOLPH BUMGARDNER, III
                                                         NOVEMBER 18, 2014
JOHN D. IRONS


                    FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                                  Michael F. Devine, Judge

            Dorothy M. Isaacs (Tashina M. Harris; Surovell, Isaacs, Petersen &
            Levy, PLC, on briefs), for appellant.

            John E. Byrnes (Laura M. O'Brien; Kelly Byrnes & Danker, PLLC,
            on brief), for appellee.


        Anne-Lise Quinn appeals her contempt citation for violation of the terms of her marital

settlement agreement with John D. Irons.  She maintains the terms of the agreement were

ambiguous.  He cross appeals and maintains his former wife was required to document compliance

with the agreement and should pay his attorney's fees.  Concluding that the terms of the agreement

were clear and unambiguous and that the trial court properly ruled on the related issues raised on

this appeal, we affirm.

        The parties married on June 4, 1991 and separated on January 5, 2012.  Quinn and Irons

executed their settlement agreement on March 4, 2013, which they negotiated through arbitration

while represented by counsel.  Their four children were aged 17, 14, 9, and 6 when they entered

the agreement.  Paragraph 13(b)(III) entitled "College Savings Accounts," provided:

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

> Husband shall retain the college education accounts that are associated with [the two oldest children] . . . , and these accounts are already held by Husband. Wife shall retain the college education accounts that are associated with [the two youngest children] . . . , and since these accounts are currently held by Husband, the parties shall execute all reasonable documents that are necessary to forthwith transfer these two accounts from Husband's name to Wife's name. Each party shall be identified as having the right of survivorship of the accounts held by the other party.

The final order of divorce was entered on May 21, 2013. It incorporated, but did not merge, the settlement agreement.

As required by the agreement, Irons transferred ownership of the college savings accounts for the two youngest children to Quinn. On April 2, 2013, Quinn withdrew $60,000 from one account. On June 11, 2013, she withdrew the entire balance of $21,880.91. Irons filed a petition for a rule to show cause asserting non-compliance with the agreement on November 5, 2013. Quinn withdrew an additional $10,000 from a total of $42,029.16 in the second account subsequent to December 31, 2013.

The trial court heard the rule to show cause on February 7, 2014. It found the agreement unambiguous and excluded Quinn's offer of parol evidence. The trial court found Quinn in contempt of court for having liquidated one of the college savings accounts and withdrawing a substantial portion from the other. The trial court also found that Quinn was not obligated to document the survivorship designations to Irons. It indicated that it would award attorney's fees but deferred a final decision.

Quinn filed a motion to reconsider on February 27, 2014, and proffered additional parol evidence in the form of an affidavit from the attorney who represented her during the negotiation of the settlement agreement. The trial court summarily denied the motion the next day finding it "raised no new issues or authorities not already considered by the Court."

The trial court held a review hearing on March 28, 2014. It granted Quinn's request to escrow any funds she would receive from a sale of the marital house as a way to guarantee that she could replenish the children's accounts if she lost on appeal. The trial court also reconsidered its announced intent to award attorney's fees to Irons and subsequently denied them. The trial court entered the final order on April 8, 2014, and this appeal followed.

Quinn maintains the provision in the settlement agreement that required her to "retain" the college savings accounts was ambiguous and she could introduce parol evidence to interpret her contractual obligations. Whether contract language is ambiguous is a question of law. Tuomala v. Regent Univ., 252 Va. 368, 374, 477 S.E.2d 501, 505 (1996). "Property settlement agreements are contracts and are subject to the same rules of construction that apply to the interpretation of contracts generally." Southerland v. Estate of Southerland, 249 Va. 584, 588, 457 S.E.2d 375, 378 (1995) (citations omitted). "Ordinary words are given their ordinary meaning when constructing the contract." Craig v. Craig, 59 Va. App. 527, 537, 721 S.E.2d 24, 28-29 (2012) (citing Tiffany v. Tiffany, 1 Va. App. 11, 15, 332 S.E.2d 796, 799 (1985)).

"Retain" derives from the Latin "retinere," which is a combination of the prefix "re" (meaning "back") and the verb "tenere" (meaning "hold"). New Oxford American Dictionary 1490 (3d ed. 2010). It means "continue to have (something); keep possession of . . .; not abolish, discard, or alter . . .; keep in one's memory . . .; absorb and continue to hold (a substance) . . .; keep (something) in place; hold fixed . . . ." Id. "To keep possession of; continue to have; . . . to keep in a particular place or condition." The American Heritage Dictionary of the English Language 1498 (5th ed. 2011). "To hold in possession or under control; to keep and not lose, part with, or dismiss." Black's Law Dictionary 1509 (10th ed. 2014).

That meaning was acknowledged in Richardson v. Seevers' Adm'r., 84 Va. 259, 4 S.E. 712 (1888). The Court interpreted an agreement that required a part interest in land to be

"retained." "These words have a plain and well-understood signification . . . . Retain means to continue to hold, to keep in possession; and to keep, is a synonym for to retain." Id. at 268-69, 4 S.E. at 716.

"A contract term is not ambiguous merely because the parties disagree as to the term's meaning." Bergman v. Bergman, 25 Va. App. 204, 211, 487 S.E.2d 264, 267 (1997) (citations omitted). The settlement agreement is not ambiguous, and the trial court correctly ruled that it was not. Quinn was obligated to hold or keep the college savings accounts for the two youngest children. The purpose of the accounts was for the children's college education, not for unrestricted use as Quinn's separate property.

The college savings accounts were established under the "Qualified Tuition Programs" of the Internal Revenue Code. 26 U.S.C. § 529. Such plans, popularly known as section 529 plans, take advantage of favorable state and federal tax laws that encourage prepayment or savings for specified higher educational expenses. Early withdrawal or use of the funds for non-qualified educational expenses is restricted and penalized. Quinn did not "retain" such accounts when she liquidated one account and drew heavily from the other beginning just after the contract was executed.

The trial court properly refused the parol evidence offered by Quinn because the agreement was unambiguous. "If the terms of the parties' agreement are contained in a clear and explicit writing, that writing is the sole memorial of the contract and the sole evidence of the agreement. In that event, . . . parol evidence . . . could not be used to explain the written contractual terms." Cascades N. Venture Ltd. P'ship v. PRC Inc., 249 Va. 574, 579, 457 S.E.2d 370, 373 (1995) (citing Amos v. Coffey, 228 Va. 88, 91-92, 320 S.E.2d 335, 337 (1984)).[1]

---

[1] Quinn proffered correspondence from Irons to Quinn in which he offered to re-purchase the two 529 accounts. She claims this was not subject to the restrictions of the parol evidence rule because it constituted subsequent negotiations. Such evidence was not admissible unless a

Similarly, Quinn could be held in contempt when she violated an express mandate because the requirement to retain the accounts was clear and explicit. A trial court is permitted to use its contempt power to enforce an agreement incorporated into a divorce decree. Owney v. Owney, 8 Va. App. 255, 259, 379 S.E.2d 745, 748 (1989) (citation omitted). Use of its contempt power lies within the discretion of the trial court. Wells v. Wells, 12 Va. App. 31, 36, 401 S.E.2d 891, 894 (1991).

The settlement agreement defined specifically the contractual obligations of the parties. Quinn was to retain the accounts for the two youngest children. Those accounts were section 529 plans and the purposes and provisions of the applicable tax laws provide context for defining the precise requirements for properly administering the accounts. The accounts were for the higher education of children aged nine and six years. In no way can it be argued that Quinn retained those accounts. She withdrew $60,000 from one account within one month of executing the agreement. Two months later, she withdrew an additional $21,880.91 which liquidated the account. Even after Irons began these proceedings, she withdrew another $10,000 from the second account. By liquidating one account and withdrawing substantial funds from the other, Quinn violated the express requirement that she retain the children's college savings accounts. The trial court did not abuse its discretion in finding Quinn in contempt of court.

In his cross-appeal, Irons maintains Quinn was obligated to provide him with documentation that she had made him the survivor beneficiary of the two funds transferred to her.[2] At the last hearing, counsel for Quinn represented to the court and Irons' counsel that the

---

subsequent agreement had been reached. Quinn never suggested the parties reached any subsequent agreement that modified the settlement agreement, nor did she claim there was a subsequent written agreement as required by the settlement agreement itself.

[2] Paragraph 20(e) of the settlement agreement provides, "[e]ach of the parties hereto shall, from time to time, at the request of the other, execute, acknowledge, and/or deliver to the other party any and all further instruments and/or documents that may be reasonably required to

requested document had been sent.[3]  Irons received the information requested.  The issue is moot, and this Court will not consider it.  See Daily Press, Inc. v. Commonwealth, 285 Va. 447, 452, 739 S.E.2d 636, 639 (2013).

Irons also maintains that the trial court erred in not awarding him attorney's fees.  At the conclusion of the February 7, 2014 hearing, the trial court stated, "All right.  I'm going to award fees," but deferred the matter to March 28, 2014.  At that hearing, the trial court reconsidered and reversed its earlier ruling and denied attorney's fees.  It stated that "there was a legitimate controversy" about the agreement and neither party "took a position that was unreasonable or sanctionable or anything like that."

"'[A]n award of attorney's fees is a matter submitted to the trial court's sound discretion and is reviewable on appeal only for an abuse of discretion.'"  Richardson v. Richardson, 30 Va. App. 341, 351, 516 S.E.2d 726, 731 (1999) (quoting Graves v. Graves, 4 Va. App. 326, 333,

---

give full force and effect to the provisions of this Agreement."  The desired documentation was not a document necessary to effect the designation of Irons as a survivor beneficiary.

[3]  On February 7, 2014, the trial court ordered Quinn to designate Irons as the survivor beneficiary and to provide proof that she had within 21 days.  At the March 28, 2014 hearing, the following exchange occurred:

> [Irons' counsel]:  . . . The last thing is, under your last order, she was required to provide us with notice of the survivor or beneficiary designation, and I don't believe I have received that.
>
> [Quinn's counsel]:  I sent it to you.
>
> [Irons' counsel]:  Okay.  You said –
>
> [Quinn's counsel]:  I sent it to you, Mr. Byrnes.  She gave it to me and I sent it to you.
>
> [Irons' counsel]:  And then –
>
> [Quinn's counsel]:  She did it immediately.
>
> [Irons' counsel]:  Okay.

357 S.E.2d 554, 558 (1987)).  The settlement agreement itself invoked the court's discretionary authority.  It provided that a court "may award attorney's fees and/or costs incurred by either party in securing the adherence of the other party to the terms of this agreement."

The trial court did not abuse its discretion in declining to award attorney's fees to Irons. The initial decision was not final and remained subject to review.  The trial court explained that it reconsidered its decision to award fees and stated its reasons.  We cannot find that the trial court abused its discretion by reviewing a preliminary decision and finally denying the request for attorney's fees.

On appeal, both parties have requested an award of attorney's fees and costs.  See O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996).  In the exercise of our discretion, we decline an award to either party.

The trial court's rulings are affirmed.

Affirmed.