MRS. CLARA M. FEATHERSTON v. JAMES H. MERRIMON ET AL.*

(Filed 30 May, 1908.)

1. **Deeds and Conveyances—Construction—Entirety—Intent.**
    In construing a deed the court will examine the entire instru-
    ment and construe it as a whole, consistent with reason and com-
    mon sense, to effectuate the intention of the parties.

2. **Deeds and Conveyances—Descriptive Words—Reservation—"Re-
    tain."**
    When in a deed describing by boundaries the land therein con-
    veyed the words, "including a lot given to S. C. W., which is still
    retained," are used, the clear meaning of the word "retain" ex-
    cludes the conveyance of that part of the lands, and title passes
    only to the land within the larger boundaries, exclusive thereof.

3. **Deeds and Conveyances—Property of Another—Intent—Presump-
    tions.**
    In the construction of a deed the presumption is that the
    grantor does not intend to convey property of another contained
    within the description of the land conveyed.   Such intent must
    clearly appear.

4. **Deeds and Conveyances—Trusts and Trustees—Parties—Estoppel.**
    A deed made by one assuming to act as trustee for the benefit
    of his grantor's wife and children, under a deed in trust not exe-
    cuted by the wife, does not by its recitals estop the wife, when
    not a party thereto, from claiming title to her land embraced
    therein.

*HOKE, J., did not sit upon the hearing of this case.

5. **Deeds and Conveyances — Trusts and Trustees — Husband and Wife—Tenant by the Curtesy—Wife's Land—Deed of Husband—Intent Presumed—Wife's Estoppel.**

A trustee for the wife, under a deed from the husband which was not executed by the wife, conveyed certain lands to N. upon the same uses and trusts. The husband and wife separated during the year in which the deed was made. The land conveyed was by given boundaries, but the description contained these words: "including the lot given to the wife by her father (which is still retained by her)." The husband had an interest in his wife's land as tenant by the curtesy. The wife was not a party to the deed: *Held*, (1) if it be conceded that the lot spoken of as "retained" by the wife passed by the description, the law will presume that only such interest as the husband had therein was, or was intended by him to be, conveyed; (2) as to the wife, there was no estoppel created so as to pass her estate.

6. **Deeds and Conveyances — Descriptive Words — Husband and Wife—Trusts and Trustees—Judgment, Construction of—Estoppel—Injunction.**

In an action to remove a trustee created under the husband's deed of trust for the benefit of the wife and children it was established by the verdict of the jury, upon the issues submitted, that certain lands of the wife embraced in the boundaries of the said deed were not by the use of the language "including," etc. "(which is still retained)," included in the conveyance. Judgment was rendered reciting the issues and verdict thereon, using the same descriptive words of the land as used in the trust deed. The present action is by the child to enjoin the sale, under a subsequent mortgage, of the wife's land thus excluded in the former judgment from the operation of the trust deed: *Held*, that, construing the former judgment as an entirety, (1) it was not intended by the court to divest the wife of her title to the land by reason of the use in the judgment of the description contained in the trust deed; (2) the use of the descriptive language by the court, under the circumstances, adopting the description contained in the trust deed, evidenced his opinion that the wife's land was excluded; (3) the plaintiff in this action is estopped by the former judgment to claim any interest in the land mortgaged by the wife; (4) a restraining order upon these facts should be dismissed.

ACTION heard by *Guion, J.,* at September Term, 1907, of BUNCOMBE.

This is an action to enjoin the defendants from selling, under a deed of trust from Samantha C. Wilson to J. G. Mer-

rimon, executed to secure a debt of $500 to J. H. Merrimon, a parcel of land in the city of Asheville, fronting on Main Street and particularly described in a deed from James W. Patton to Tenison Cheshire, and by the latter conveyed to his daughter, Samantha Cheshire, who married John W. Wilson in 1851. Wilson and his wife separated, it appears, about 1861. The plaintiff is the surviving child of that marriage. On 16 April, 1861, J. M. Israel, who professed to act as trustee of said Samantha C. Wilson and her children, under a deed from John W. Wilson to him for their use and benefit, conveyed a certain lot in Asheville, the boundaries of which the plaintiff claims include the property now in controversy between the parties, but the description is in the following words: "Also one lot on Main Street in Asheville, bounded on the east by said street, north and west by the lot of said J. W. Wilson, and south by the lot of J. B. Meares, including the lot given to said Samantha C. Wilson by her father (which is still retained by her), said lot hereby granted, said lot being 31⅛ feet front by 90 feet deep, to a line with the oak tree on the back of said lot, parallel to the street, being part of a lot conveyed by J. B. Sawyer, C. M. E., at the sale of the Coch lands." The deed of J. M. Israel merely purports to convey the legal title, which he claimed to have, to George W. Neely, to be held by the latter upon the same uses and trusts and in the same manner as he held it.

On 25 November, 1892, an action was brought by John W. Wilson and his daughter, Clara M. Featherston, who is the plaintiff in this action, against Samantha C. Wilson, George W. Neely, trustee, and J. M. Israel, for the purpose of having George W. Neely removed as trustee and another trustee appointed, for an account of his trust and for any amount found to be due Clara M. Featherston, and that she be declared the equitable owner in fee of the land described in the deed from J. M. Israel to George W. Neely, with the present right to two-thirds of the rents and profits of the said realty. The

deed of J. M. Israel to George W. Neely is annexed to the complaint in that action as an exhibit. The defendants answered, denying the material allegations of the complaint. John W. Wilson died during the pendency of that action.

The issues raised by the pleadings were submitted to a jury, which, with the answers thereto, are as follows:

1. "Has the trustee, George W. Neely, wrongfully failed to perform the duties of trustee imposed upon him by the deed of trust?" Answer: "Yes."

2. "Was the property sued for purchased and paid for with the separate property of the defendant?" Answer: "No."

3. "Were the four acres contained in said deed, situated on College Street, bought and paid for with the money of the defendant and with the understanding and agreement that the same should belong to the defendant and be her separate property?" Answer: "No."

4. "Is the plaintiff tenant in common with the defendant in the land set out and described in the complaint and deed of trust, and to what interest in said property is plaintiff entitled?" Answer: "Yes; two undivided thirds in fee, and remainder in the other third, after the death of S. C. Wilson, in the lot on College Street, and in the one on Main Street, except that portion on Main Street which the father of the defendant S. C. Wilson conveyed to her."

5. "Does the defendant Samantha C. Wilson wrongfully retain possession of said land?" Answer: "Yes, as to two-thirds."

It was therefore adjudged by the court, at March Term, 1898, his Honor, *Judge W. A. Hoke,* presiding, as follows: "That the plaintiff, Clara M. Featherston, is seized and entitled to the possession of two-thirds and the defendant Samantha C. Wilson of the remaining one-third of the trust estate created by the deed of trust of 16 April, 1861, as tenants in common during the life of the said Samantha C. Wilson, with the remainder in fee simple to the plaintiff, Clara M. Feather-

ston, at the death of the said defendant Samantha C. Wilson, and that the said plaintiff, Clara M. Featherston, is entitled to have and recover two-thirds and the defendant, Samantha C. Wilson, one-third of the rents and profits now accruing or that may hereafter accrue from or out of the lands described in said deed of trust, which is as follows: The lot in the town of Asheville on which said Samantha C. Wilson now lives, containing four acres, more or less, on College Street, on the corner opposite the grounds of the H. C. F. College, formerly conveyed by James W. Patton to said J. W. Wilson, and by Wilson to J. M. Israel in trust, for a more full description of which said deed is referred to; also one lot on Main Street in Asheville, bounded on the east by said street, north and west by the lot of said J. W. Wilson, and south by the lot of J. B. Meares, including the lot given to Samantha C. Wilson by her father (which is still retained by her), and fully described in the deed of Tenison Cheshire, registered in Book 25, page 101, of the Register's office of Buncombe County, said lot is hereby granted, being 31⅛ feet front by 90 feet deep, to a line with the oak tree on the back of said lot, parallel to the street, being part of a lot conveyed by J. B. Sawyer, C. M. E., at the sale of the Coch lands, during the life of the said Samantha C. Wilson, and at her death the plaintiff, Clara M. Featherston, shall have and receive the rents and profits accruing thereon, forever and in fee simple, as provided in the said deed of trust." It was further adjudged that George W. Neely be removed from his office as trustee, with directions as to the administration of his trust. The defendant in that action, Samantha C. Wilson, was adjudged to pay the costs. The defendant Samantha C. Wilson excepted and appealed, and at September Term, 1898, of this Court the judgment was affirmed (123 N. C., 623).

In this action his Honor, *Judge O. H. Guion,* at October Term, 1907, continued the injunction to the final hearing, and the defendants J. H. and J. G. Merrimon duly excepted and appealed.

*Merrick & Barnard* for plaintiff.

*Merrimon & Merrimon, Thomas Settle* and *G. S. Reynolds* for defendants.

WALKER, J., after stating the facts: The decision of this case may well depend upon what is the true construction of the deed of J. M. Israel to George W. Neely, dated 16 April, 1861, and the verdict and the judgment of the court in the case of *Featherston v. Wilson and others,* which was rendered at March Term, 1898, of the Superior Court of Buncombe County. Samantha C. Wilson executed a deed to J. G. Merrimon, as trustee, to secure a debt of $500 due to James H. Merrimon for money borrowed, the land conveyed by that deed being the lot which she got from her father, Tenison Cheshire, who himself had acquired it from James W. Patton by deed dated 10 February, 1853, and it is the same lot which is mentioned in the deed of J. M. Israel to George W. Neely as having been retained by her. If that lot was not conveyed by the deed of Israel to Neely, then the Judge erred in continuing the injunction to the hearing, as in that event the defendant has a right to sell the same under the power of sale contained in the deed of trust to him, provided, also, he and his codefendant are not concluded or estopped by the judgment and proceedings in the suit of *Featherston v. Wilson.* We do not think the lot described in the deed of trust to the defendant J. G. Merrimon was conveyed or intended to be conveyed by Israel in his deed to Neely. The expression in that deed, "including the lot given to the said Samantha C. Wilson by her father," when considered in connection with the words in parentheses which immediately follow, namely, "which is still retained by her," shows very clearly that the words first quoted were merely used as descriptive of the larger boundary and not for the purpose of embracing the smaller lot within the terms of the grant, so that it would also pass by the deed. The words "which is still retained by her"

were evidently inserted in the deed with the intention of excepting the smaller lot from the conveyance. If not, why use those words at all? What other meaning can we ascribe to them than the one which we have adopted? And yet we know that they were intended to have some weight and significance in determining what the parties intended to convey. Deeds, like most other instruments, should be construed for the purpose of ascertaining the true intent of the parties, and we should look at the whole instrument, taking it by its four corners, as is said sometimes, and learn its meaning. The intention of the parties should always prevail, if agreeable to the rules of law. *Goodlittle v. Whitly,* 1 Burrows, 233, per *Lord Mansfield.* In *Gudger v. White,* 141 N. C., 507, we held that courts are required to interpret or construe a deed, as the case may require, to find out and effectuate the intention of the parties as gathered from the entire instrument, and it is proper to look for a rational purpose in the language and provisions of the deed, and to construe it consistently with reason and common sense. "To retain" means to hold or keep that which one already owns, "not to lose, part with or dismiss it." Webster Int. Dict. (1900), p. 1229; *Kenyon v. Saunders,* 18 R. I., 590 (30 Atl. Rep., 471). It more definitely means to "keep back" that which one then owns, for he cannot retain that to which he has no right or title. *Cudworth v. Bostwick,* 69 N. H., 536 (45 Atl. Rep., 409); 7 Words and Phrases (1905), p. 6196. So, we see, thus far, that J. M. Israel did not intend to convey the property of Mrs. Wilson, to which he had no title, so far as appears. We are not warranted in presuming that a man will do the injustice of conveying another's land and casting a cloud upon his title. The intent to do so must be clear, for the law never presumes a wrong.

There is one case in our own reports which seems to justify our construction of this deed. In *Wells v. King,* 94 N. C., 344, the deed contained a description of the general bounda-

ries by courses and distances, and there followed these words:
"including all lands not heretofore sold." This Court said:
"These lands were as much excluded from the operation of
the deed to Wells as if they had not been embraced within
the sweeping boundary of that deed. It not only did not pro-
fess to include them, but expressly excluded them from its
operation whenever it might be ascertained that they fell
within the exception." In *Brown v. Rickard,* 107 N. C., at
page 645, the Court says: "It is insisted, however, for the
appellants that the boundary referred to in these conveyances
is that particularly specified in the older grant, and that this
embraces the exception therein, designated in the pleadings
as the 'Stevely land,' and, therefore, this land is embraced by
the description, 'all the land remaining unsold and contained
within that boundary.' But what was that boundary, as in-
tended and made by the grant? It did not consist neces-
sarily and merely of the external metes and bounds of the
grant; it embraced as well its internal metes, bounds and
limits, and hence it embraced also the location, the metes and
bounds of the land excepted from the grant—the 'Stevely
land.' It had such internal boundary. The grant referred
to the excepted land, its metes and bounds, and these became
a part of its own boundary, as much so as if the same had been
specifically set forth in the grant itself. Hence 'all the land
remaining unsold and contained within the boundary of,' etc.,
implies the boundary including that which excludes the ex-
ception, that embraced the 'Stevely land.' Such is the mean-
ing of the terms and phraseology employed in the conveyances
referred to, and such was the clear intent of the parties to the
same." We do not attach any significance or importance to
the words "said lot hereby granted, said lot being 31⅛ feet
front by 90 feet deep," which immediately follow the words
in parentheses, namely, "which is still retained by her." The
words "said lot hereby granted" were evidently inserted
thoughtlessly and not intended to have any special bearing

upon the description, and certainly not to broaden its scope. The parties adopted rather a clumsy way of describing the land by giving the outside boundaries and excepting therefrom Mrs. Wilson's land, using an inapt word, "including," which, while not very appropriate to define the real boundaries, does not reverse the meaning which the parties intended to express, though it may have thrown some obscurity upon the description. But, taking all the words into consideration, we think the meaning is clearly indicated.

We do not see in this record any sufficient evidence that J. W. Wilson ever conveyed the fee in this land to J. L. Henry or to J. M. Israel as trustee. There are some recitals in the deed of Israel to Neely which point that way, but Mrs. Wilson was not a party to the deed and is not estopped by its recitals. If we may resort to mere conjecture, it may be inferred that at some time Wilson did convey to Henry. The latter signed the deed of Israel to Neely, and so did Wilson, but their names appear nowhere in the deed as grantors; and if this be sufficient to take the legal title out of Wilson and to vest it successively in Henry and Israel, which may admit of some doubt (*Adams v. Hedgepeth,* 50 N. C., 329; *Kerns v. Peel,* 49 N. C., 226, and especially *Gray v. Mathis,* 52 N. C., 502; *King v. Rhew,* 108 N. C., 698), we yet think that, as Wilson was tenant by the curtesy initiate of the land, he having had issue born alive capable of inheriting, and the separation alone not having the effect of divorcing the parties (*Wilkes v. Allen,* 131 N. C., 279), it must be assumed in law that he intended to convey only his own estate and interest in the lot; and surely it would not create any estoppel as to her, and thereby pass his wife's estate, as an estoppel does not arise where an interest passes by the deed, and the husband in this case had such an interest, which expired with his death, during the pendency of the former action. It is not controverted, we believe, that Mrs. Wilson acquired title to the lot in controversy from her father, Tenison Cheshire,

and that she mortgaged it to Judge Merrimon. We discover nothing in this case to show that she has *ever* parted with her title, except in the manner just mentioned. We have so far, of course, discussed the case upon the assumption that the deed of Israel to Neely was sufficient in form and in the mode of its execution to divest Wilson of the legal title and to estop Mrs. Wilson, neither of which propositions can successfully be maintained, as we think.

But when we examine the record of the former suit between the plaintiff, Clara M. Featherston, and Mrs. Wilson, we think a conclusive case is presented for the defendants. It will be readily seen that, by any kind of permissible construction of the verdict and judgment in that case, the court intended to exclude the lot now in controversy from the operation of its decree and to declare and adjudge, at least by the clearest implication, the legal and equitable title to be in Mrs. Wilson. There were two lots described in the Israel deed and in that suit—one on College Street and the other on Main Street. The latter is the one now in dispute. The verdict, by express words, the meaning of which cannot well be misunderstood, excludes the Main Street lot. The issue and verdict are as follows: "Is plaintiff tenant in common with the defendant in the land set out and described in the complaint and deed of trust, and to what interest in said property is the plaintiff entitled?" Answer: "Yes; two undivided thirds in fee and the remainder in the other third after the death of S. C. Wilson in the lot on College Street and in the one on Main Street, which she acquired (presumably) by gift from her father, Tenison Cheshire." And they also find that at that time she still owned it, and it is accordingly excepted from the description of the land of which they declare the parties to be tenants in common. It is not to be presumed that the learned counsel who appeared for Mrs. Wilson and the learned and accurate Judge who presided at the trial, distinguished for his carefulness in the trial of causes and his

correct perception of the matters involved therein, would enter a judgment inconsistent with the verdict and which would deprive Mrs. Wilson of the benefit which she derived from the decision of the jury in her favor. But we do not think the judgment was so drawn. It recites the verdict of the jury, and thereby clearly indicates what its scope and effect were intended to be. It is true, in a subsequent part of the judgment the same language is used as we find in the deed of Israel to Neely, but this only goes to show what idea the learned Judge thought that language was intended to convey, namely, that the lot which Mrs. Wilson acquired from her father was not to be considered as a part of the lands held in common by the parties, but was excepted from the operation of the deed. We must construe the case as an entirety and not disjointedly, and, when so considered, we do not hesitate to conclude that it was not in the contemplation of the court to divest Mrs. Wilson of her title to the lot which is described in the deed of trust to J. G. Merrimon. The suggestion that Mrs. Wilson never claimed more than a life estate cannot change the result in the least, if it is well founded. It related, of course, to the land outside the boundaries of the Tenison Cheshire lot. We must hold, upon a fair construction of the record in *Featherston v. Wilson,* that the plaintiff is estopped thereby now to claim the lot conveyed to J. G. Merrimon, instead of the defendants being concluded by that record under the doctrine of *lis pendens.* The general result is that his Honor erred in continuing the injunction to the hearing. It should have been refused and the defendant J. G. Merrimon permitted to sell under the power of sale contained in the deed of trust. The court, perhaps, might have ordered that the plaintiff, if she has an interest in the property as heir of her mother, should have reasonable time to redeem the land. But with this matter we have nothing to do now.

148—14

We have not discussed the doctrine of *lis pendens* or that of election, so ably and learnedly presented in the briefs of counsel, as we do not deem it necessary to do so, in the view we take of the case. The doctrine of *lis pendens* and the equitable principle of .election are clearly excluded by our construction of the deed. We are of the opinion, and so decide, that the plaintiff has stated no cause of action against the defendants in her complaint, and the action should therefore be dismissed.

The judgment should be reversed, and it is so ordered.

Reversed.