SHENANDOAH LIFE INSURANCE COMPANY, INC., v. W. P. SAND-RIDGE, SUBSTITUTED TRUSTEE; MAUDE MILLER, MRS. EFFIE M. VINSON, BERTHA M. ROSE, C. A. BURKE, GUARDIAN FOR DORIS ELIZABETH BURKE, MARY PAULINE BURKE AND MARTHA EUGENIA BURKE.

(Filed 2 February, 1940.)

1. **Estoppel § 2—Cestui held estopped by deed releasing land from deed of trust from claiming interest therein by reason of subsequent purchase from stranger to the instrument of note secured by the deed of trust.**

The corporate purchaser of land executed a purchase money deed of trust to secure the balance of the purchase price. Upon maturity of one of the notes secured thereby, the president of the corporation borrowed money on his personal note from a stranger to the instrument, used the

INSURANCE CO. *v.* SANDRIDGE.

proceeds to pay the purchase money note and had the purchase money note transferred to him individually and pledged same as collateral security for his personal note. In order to finance improvements on part of the land, the corporation acquired a quitclaim deed for that part from the trustee and the holders of the notes secured by the deed of trust except the holder of the pledged note, the quitclaim deed expressly reciting that it should forever bar the grantors therein from asserting any claim against the said tract, and then the corporation deeded the tract to its president individually, who borrowed money from plaintiff to make the improvements, and secured same by another deed of trust, the holders of the purchase money notes, other than the note pledged as collateral security, obtaining a part of the loan as consideration for the quitclaim deed, with knowledge that plaintiff was relying on the quitclaim deed and believed that its deed of trust constituted a first lien on the property. Defendant, the holder of one of the notes secured by the original deed of trust, who had signed the quitclaim deed, thereafter purchased, long after its maturity, the pledged note to prevent foreclosure by the pledgee, and then instituted this action to foreclose the original deed of trust. *Held:* Defendant is estopped by the quitclaim deed and the matters *in pais* from asserting any interest in the land as against the *cestui* who bought the land under foreclosure of the instrument securing its debt, the language of the quitclaim deed that the grantors therein should be forever barred from asserting any claim against the property being sufficient to estop the assertion of an after-acquired title based upon the lien of the original deed of trust, and an express warranty not being necessary to support an estoppel.

2. **Estoppel § 6h—Under facts of this case, knowledge of attorney held not such as to preclude plaintiff from asserting estoppel.**

The corporate purchaser of land executed a purchase money deed of trust to secure the balance of the purchase price. Upon maturity of one of the notes secured thereby, the president of the corporation borrowed a sum of money on his personal note from a stranger to the instrument, used the proceeds to pay the purchase money note and had the purchase money note transferred to him individually and pledged same as collateral security for his personal note, the pledge being drawn by an attorney. Thereafter in refinancing the property to obtain funds for improvements, a quitclaim deed was executed by the trustee and the holders of the notes secured by the original deed of trust, except the holder of the pledged note, and a new deed of trust was executed to the lender. The title was looked up by an associate in the office of the attorney who had drawn the pledge, who relied on the quitclaim deed and the affidavit of the president of the corporation stipulating the unpaid notes secured by the original deed of trust, which affidavit failed to name the pledged note. A holder of one of the notes secured by the original deed of trust, who had signed the quitclaim deed, subsequently bought the pledged note after maturity and sought to foreclose the original deed of trust. *Held:* The knowledge of the attorney, under the facts and circumstances of this case, does not preclude the *cestui* from asserting an estoppel against the purchaser of the pledged note.

APPEAL by defendants from *Hamilton, Special Judge,* at September Term, 1939, of FORSYTH. Affirmed.

This is an action brought by plaintiff against defendants and W. P. Sandridge, substituted trustee. The defendant Maude Miller claims the nonpayment of a $10,000 bond made 16 April, 1926, to Doris M. Burke, by Englewood, Inc., and assigned to J. A. Bolich, Jr., who made a bond to George W. Edwards for $10,000 and placed the bond with other collaterals, which were afterwards purchased by Maude Miller, defendant, on 11 February, 1937, for $4,345.47 (now claiming about $11,000) and to restrain W. P. Sandridge, substituted trustee, from selling the lot securing said bond now claimed by plaintiff—it having purchased same under trustee sale of E. Lee Trinkle *et al.*

The evidence on the part of plaintiff:

(1) Deed, dated 16 April, 1926, from Gaston E. Miller, widower, and Doris M. Burke and her husband, C. A. Burke, to Englewood, Inc., $10,000 and other valuable considerations. Description: Lying and being in the city of Winston-Salem, North Carolina, measuring 100 feet on West Fourth Street, and of that width extending northwardly 200 feet to 4½ Street, being bounded on the north by 4½ Street, east by Lot No. 290, south by Fourth Street, and west by Lot No. 292. The above described lot being known and designated on the plat of Winston as Lot No. 291, being the same lot conveyed to said Gaston E. Miller by J. S. Miller and wife and G. L. Miller and wife, on 20 March, 1880. See Book of Deeds No. 21, pages 16 and 17, register of deeds' office, Forsyth County.

(2) On 16 April, 1926, Englewood, Inc., the owner of the land deeded to it by Gaston E. Miller, and Doris M. Burke, made and executed a deed of trust to R. J. Franklin, trustee, to secure an indebtedness of $90,000, evidenced by bonds, as follows: 1 bond for $10,000.00, payable to Doris M. Burke, or order, due one year after date; 1 bond for $10,000.00, payable to Doris M. Burke, or order, due two years after date; 1 bond for $10,000.00, payable to Doris M. Burke, due three years after date; 1 bond for $10,000.00, payable to Gaston E. Miller, or order, due four years after date; 1 bond for $10,000, payable to Doris M. Burke, or order, due five years after date; 1 bond for $40,000.00, payable to Gaston E. Miller, or order, due five years after date. This was balance purchase money on land deeded to it by Miller and Burke, the consideration was $100,000.00—$10,000 paid in cash. The property consisted of (1) the L-shaped Bowling Alley lot, (2) the 60 by 100 foot lot. This deed of trust was duly recorded in Book 209, p. 218, registry of Forsyth County, North Carolina.

(3) Deed dated 28 August, 1930, from Englewood, Inc., to J. A. Bolich, Jr., one dollar and assumption of the balance due on a certain debt secured by a deed of trust bearing date of 16 April, 1926, recorded in Book 209, page 218. Description: Tract 1—L-shaped Bowling Alley

lot; Tract 2—a lot 60 x 100 feet on the north side of West 4th Street. Probated and filed 8 September, 1930; recorded in Book 329, page 296.

(4) Deed of trust, dated 27 August, 1930, from J. A. Bolich, Jr., and wife, Rosalie F. Bolich, to E. Lee Trinkle, W. L. Andrews and J. P. Saul, Jr., trustees for Shenandoah Life Insurance Company, Inc., securing $60,000 due and payable three years after date, with interest at six per cent. Description: The L-shaped Bowling Alley lot. The plaintiff claims only the Bowling Alley lot, having purchased same under the sale of its deed of trust.

(5) Deed, dated 20 November, 1930, from J. A. Bolich, Jr., and wife, Rosalie F. Bolich, to Bolich Holding Corporation. Ten dollars and assumption of deed of trust to E. Lee Trinkle et al., trustees, in the sum of $60,000.00, recorded in Book 277, page 53; a deed of trust to R. J. Franklin, trustee, and Gaston E. Miller and Doris M. Burke, recorded in Book 209, page 218; a deed of trust to A. P. Grice, trustee, securing the sum of $40,000.00, recorded in Deed of Trust Book 202, page 101 (property not in controversy); and deed of trust to J. H. McKeithan, for the sum of $12,000.00, recorded in Book ......, page ....; and all taxes and assessments due the county of Forsyth and city of Winston-Salem for the year 1930. Description: Tract No. 1—the L-shaped Bowling Alley lot (this is the only piece in controversy); Tract No. 2—lot on the north side of West Fourth Street, 60 x 100 feet; Tract No. 3—not in controversy. Recorded in Book 332, page 43.

(6) Quitclaim deed. "State of North Carolina; Forsyth County. Know all men by these presents, that we, Maude Miller (single), Mrs. Effie M. Vinson and husband, Luby Vinson, and Mrs. Bertha M. Rose and husband, Samuel Rose, C. A. Burke, Guardian of Doris Elizabeth Burke, Mary Pauline Burke and Martha Eugenia Burke, C. A. Burke, Administrator of the estate of Mrs. Doris M. Burke, and W. E. Franklin, Trustee, and C. A. Burke, of Forsyth County, state aforesaid, for divers good causes and considerations thereunto moving, and more particularly for Ten Thousand Dollars and other valuable considerations received of Englewood, Inc., have remised, released and forever quitclaimed and by these presents do, for ourselves and our heirs and assigns, justly and absolutely remise, release and forever quitclaim unto Englewood, Inc., and to its heirs and assigns forever, all such right, title and interest and estate as we have or ought to have in or to all that place, parcel or lot of land lying in Winston Township, Forsyth County, State of North Carolina, and described as follows: BEGINNING at a point on the north side of West Fourth Street in the city of Winston-Salem, said point being the southeast corner of Lot No. 292, as shown on the plat of Winston, and being also the southwest corner of Lot No. 291, and running thence north 5 degrees 30' west 208 feet to 4½ Street; thence north

25—216

84 degrees east 100 feet along 4½ Street to a point, the northwest corner of Lot No. 290; thence south 5 degrees 30′ east 108 feet along the west line of Lot No. 290 to a point; thence south 84 degrees west 80 feet to a point; thence south 5 degrees 30′ east 100 feet to a point in the north line of West Fourth Street; thence along West Fourth Street 20 feet to the point of beginning. Being a strip of land fronting 20 feet on West Fourth Street and extending back northwardly 100 feet, and another tract adjoining and north thereof 100 feet x 108 feet, both being parts of Lot No. 291 as shown on plat of Winston. (L-shaped Bowling Alley lot.) The purpose of the above quitclaim being to release the owner, Englewood, Inc., of the above described property from the effect of the deed of trust recorded in Book 209, page 218. TO HAVE AND TO HOLD the above-released premises, unto it said Englewood, Inc., its successors and assigns, to it and their only proper use and behoof forever; so that neither we, nor either of us, nor any other person, in our name and behalf, shall or will hereafter claim or demand any right or title to the premises, or any part thereof; but they and every one of them shall, by these presents, be excluded and forever barred. IN WITNESS WHEREOF, we, the said parties of the first part, have hereunto set our hands and affixed our several seals, this ...... day of August, 1930. Maude Miller (Seal), Effie M. Vinson (Seal), Luby Vinson (Seal), Bertha M. Rose (Seal), Samuel Rose (Seal), C. A. Burke, Admr. of Mrs. Doris M. Burke (Seal), C. A. Burke, Guardian of Doris Elizabeth Burke, Mary Pauline Burke and Martha Eugenia Burke (Seal), W. E. Franklin, Trustee (Seal), C. A. Burke (Seal)." All acknowledgments were taken by Josephine L. Maxwell, notary public, on 27 August, 1930. This instrument was probated and filed for recordation 10 September, 1930, and registered in Deed Book 330, page 15. As to the administrator and guardian for the minors signing the above paper writing, a petition was duly filed giving the facts before the clerk, who made an order allowing the "releasing said property from the deed of trust," etc., for a consideration set forth. This was approved by the judge of the Superior Court.

(7) On 10 August, 1937, the defendant W. P. Sandridge was appointed substitute trustee, under the laws of North Carolina, of a deed of trust executed by Englewood, Inc., a corporation of the State of North Carolina, under date of 16 April, 1926, to R. J. Franklin, trustee, recorded in Book of Deeds of Trust 209, page 218, in the office of the register of deeds for Forsyth County, North Carolina, the said R. J. Franklin, original trustee under said deed of trust, being dead. Doris Elizabeth Burke, Mary Pauline Burke and Martha Eugenia Burke are minors. C. A. Burke was duly appointed guardian by the clerk of the Superior Court on 11 March, 1930, and is now the duly acting guardian

for said minors. They are the children of Doris M. Burke, who died on 25 February, 1930.

(8) The note in controversy is as follows: "$10,000.00. Winston-Salem, N. C., April 16, 1926. Two years after date we promise to pay to the order of Mrs. Doris M. Burke Ten Thousand and 00/100 Dollars with interest from date at the rate of 6% per annum and payable annually until paid. Secured by Deed of Trust of even date to R. J. Franklin, Trustee, and providing if this bond is not promptly paid at maturity thereof, then and in that event the entire debt secured by said deed of trust shall instantly become due and payable. Purchase money in part for land conveyed by said deed of trust. Payable at ..............., Value received. Englewood, Inc., By. J. A. Bolich, Jr. Attest: J. H. McCabe (Seal), Secretary. No. .......... Due April 16, 1928." On the back: "Int. pd. to Apr. 16, 1927. Transferred without recourse to J. A. Bolich, Jr. Mrs. Doris M. Burke—Crt. $195.37 Oct. 16, 1929 J. A. Bolich, Jr." By proportionate part of proceeds of foreclosure of part of security. $6,228.37.

(9) Trustee's deed, dated 14 June, 1938, from W. P. Sandridge, substituted trustee, to Maude Miller, individually, Maude Miller, Mrs. Effie M. Vinson and Mrs. Bertha M. Rose, executrices of the estate of Gaston E. Miller, and C. A. Burke, guardian of Doris Elizabeth Burke, Mary Pauline Burke and Martha Eugenia Burke, reciting deed of trust from Englewood, Inc., dated 16 April, 1926, to R. J. Franklin, trustee, recorded in Deed of Trust Book 209, at page 218; default in the payment of the obligation secured thereby, due advertisement and sale on 16 May, 1938, and purchased at such sale by the grantees for the sum of twenty-five thousand dollars ($25,000.00). Description: 60 by 100 feet lot. Filed for registration 5 July, 1938; recorded in Book 435, page 99.

(10) Stipulation. The defendants, Maude Miller, Effie M. Vinson and Bertha Rose, executrices of Gaston E. Miller, deceased, and C. A. Burke, guardian, have foreclosed the tract of land fronting 60 feet on Fourth Street and running back 100 feet under the deed of trust from Englewood, Inc., to R. J. Franklin, trustee, dated 16 April, 1926, recorded in Deed of Trust Book 209, at page 218, and have acquired title thereto by a trustee's deed which has been duly recorded. The defendant W. P. Sandridge, substituted trustee, at the direction of the other defendants named herein, advertised for sale all of the lands described in both the Miller and Shenandoah Life Insurance Company, Inc., deeds of trust, the sale to be held at the courthouse door at noon on 15 January, 1938. This action was to restrain the sale of the land in controversy and to declare plaintiff the sole owner.

The following issue was submitted to the jury: "Is the plaintiff, the Shenandoah Life Insurance Company, Inc., the owner and in the posses-

sion of Tract No. 1, described in the deed of trust recorded in Book of Deeds of Trust 277, at page 53, in the office of the register of deeds for Forsyth County, in fee simple, free and clear of any claim, right, title or interest of the defendants, or any of them, as alleged in the complaint?" The jury answered the issue "Yes."

His Honor, Oscar O. Efird, judge of the Forsyth County Court, rendered judgment on the verdict. Defendants made numerous exceptions and assignments of error and appealed to the Superior Court. The Superior Court overruled the exceptions and assignments of error made by the defendants. The defendants made numerous exceptions and assignments of error and appealed to the Supreme Court. The material ones and other necessary facts will be set forth in the opinion.

*Roy L. Deal for plaintiff.*
*Manly, Hendren & Womble, L. K. Martin, and W. P. Sandridge for defendants.*

CLARKSON, J. At the close of plaintiff's evidence and at the conclusion of all the evidence, the defendants made motions in the court below for judgment as in case of nonsuit. N. C. Code, 1935 (Michie), sec. 567. The court below refused these motions, and in this we can see no error.

The judge of the Forsyth County Court charged the jury that "If you believe the evidence in this case and find from that evidence and by its greater weight," setting forth certain evidence, and finally charged: "The effect of my instructions to you, which you will remember and take in connection with what I am now saying was, in effect, that if you believed the evidence and found the facts to be true as testified to and as shown by the record evidence, and found therefrom, from that evidence and by its greater weight, certain facts which I outlined to you in my charge, that then you would answer that issue 'Yes.' My further instruction was that if you did not believe the evidence and the records introduced and the admissions of the parties, or if you failed to find the facts to be true and failed to find certain facts from the evidence and by its greater weight, that then you would answer that issue 'No.'" The issue was answered "Yes."

A nonsuit was taken in the suit of George W. Edwards against Englewood, Inc. Shenandoah Life Insurance Company, Inc., was made a party defendant at the instance of the Millers and Burkes, but not at the instance of George W. Edwards. George W. Edwards never mentioned to C. A. Burke, husband of Doris M. Burke (deceased) and administrator and guardian of her children, that he held the $10,000 bond in controversy until some time prior to 1934. He never did mention it to Mrs. Vinson, Mrs. Rose, or Maude Miller. He was induced

to take a nonsuit to foreclose part of Lot No. 291 only after he received from Maude Miller $4,345.47 for the $10,000 Englewood, Inc., bond held by him as collateral to Bolich's note with the other collateral—viz., one hundred shares of the preferred stock in Carolina Building, Inc., of the par value of one hundred ($100.00) dollars; fifty shares of common stock in Carolina Building, Inc., of no par value.

This bond and the collateral put up by Bolich were all sold to Maude Miller after the paper writing, dated 27 August, 1930, was signed by Maude Miller. Bolich and wife sold the property in controversy (the L-shaped Bowling Alley lot) with other property on 20 November, 1930, to Bolich Holding Corporation, and it assumed the payment of the $60,000 loan made by plaintiff and other indebtedness. At the time Edwards was secretary and treasurer of the Bolich Holding Corporation. On 18 March, 1930, he purchased $43,500 preferred stock in the corporation. Bolich was president. Edwards, as secretary and treasurer, made disbursements for the corporation and signed all the checks and received rents, etc. He discussed the business plans with Bolich, the president. The offices of the Bolich Holding Corporation were directly across the street from the Bowling Alley Building (L-shaped lot), which plaintiff had taken a lien on for $60,000, to help pay for building same. It was in evidence that his dealings with Bolich were many and important over a series of years. All this time the $10,000 bond was never mentioned. Bolich testified: "In my opinion, the fair market value of the Carolina Building, Inc., stock pledged with Mr. George W. Edwards at the time of its pledge was fifty cents on the dollar." . . . "I simply overlook the $10,000 obligation of Englewood, Inc., payable to Doris M. Burke, which was pledged with Mr. Edwards as security for my loan. I considered this note paid and apparently forgot about it."

Maude Miller taught school for about thirty years. On 11 February, 1937, she purchased from George W. Edwards the note of J. A. Bolich, Jr., dated 12 April, 1928, and paid him $4,345.47 for that note, and the collaterals before mentioned—viz., the note of Englewood, Inc., dated 16 April, 1926, payable to Doris M. Burke, or order, maturing two years after date, in the sum of $10,000. When Maude Miller purchased the note and collateral above named, on 11 February, 1937, for $4,345.47, she had theretofore, when plaintiff was lending the $60,000, received $19,595.85 of the loan. So that plaintiff could obtain a first lien on the L-shaped Bowling Alley lot, she was the first to sign the paper writing reading, in part: "To Have and to Hold, the above-released premises, unto it said Englewood, Inc., its successors and assigns, to its and their only proper use and behoof forever; so that neither we, nor either of us, nor any other person, in our name and behalf, shall or will hereafter claim or demand any right or title to the premises, or any part thereof;

but they and every one of them shall, by these presents, be excluded and forever barred." W. E. Franklin, trustee in the deed of trust, also under seal signed the paper writing.

Maude Miller testified, in part: "We divided this sum between us. When I got a check for $19,595.85, I knew that it was part of the proceeds of a loan made on the L-shaped Bowling Alley lot. I knew at the time of executing the quitclaim deed or instrument recorded in Book 330, at page 15, that the reason for executing it was in order that the company lending the money should get a first lien on the L-shaped Bowling Alley lot." In the very teeth of this solemn agreement, under seal, which plaintiff relied and acted upon, dated 27 August, 1930, she purchased this bond in controversy, dated 16 April, 1926, due at 2 years, on 11 February, 1937—nearly 11 years thereafter—for $4,345.47, and is now making claim against plaintiff for some $11,000, contrary to her solemn agreement under seal, which she signed and which plaintiff relied and acted on. "So that neither we, nor either of us, nor any other person, in our name and behalf, shall or will hereafter claim or demand any right or title to the premises, or any part thereof." See *Edwards v. Buena Vista Annex, Inc., ante,* 706.

The defendant, Maude Miller, in her brief makes the following important admission in this respect: "In the case at bar it was undoubtedly the purpose of the grantors to release the described property from their claims under this purchase money deed of trust, and the grantors undoubtedly thought that they held all of the notes (bonds) which were secured by that deed of trust."

In defendants' brief is the following: "Why did Maude Miller buy this note? Miss Maude Miller did not buy this note voluntarily as a business transaction. She bought it as a matter of self-preservation. (1) Mr. Edwards was seeking to foreclose all the security left for the notes she and her sisters, as heirs of Gaston Miller, and her nieces, as the infant heirs of Doris Miller Burke had; and she was compelled to buy this note to protect the little security which they had left. (2) Mr. Edwards, a well-to-do man, could have bought up this 60 by 100 foot lot. As he was claiming the face of his note ($10,000) with interest for over nine years—a total of more than $15,000—his note alone approximated the value of the 60 by 100 foot lot. (3) There was no market for this lot when Mr. Edwards instituted his suit to foreclose and at the foreclosure it would have brought an inadequate price. (4) Miss Maude Miller bought the note for less than Mr. Edwards was claiming and for less than he would have recovered. Mr. Edwards claimed more than $15,000, and Miss Maude Miller bought it for $4,345.47." We think that Maude Miller is estopped by her conduct and solemn covenant under seal, to make the contention she now makes. The language and

intentions are clear and unequivocal in the paper writing, under seal. She was an intelligent woman *sui juris* when she signed the paper writing.

In *Seawell v. Hall,* 185 N. C., 80 (82-3), it is written: "Discussing the question in *Gudger v. White,* 141 N. C., 513, *Walker, J.,* pertinently said: 'It is not difficult by reading the deed to reach a satisfactory conclusion as to what the parties meant, and we are required by the settled canon of construction so to interpret it as to ascertain and effectuate the intention of the parties. Their meaning, it is true, must be expressed in the instrument; but it is proper to seek for a rational purpose in the language and provisions of the deed and to construe it consistently with reason and common sense. If there is any doubt entertained as to the real intention, we should reject that interpretation which plainly leads to injustice and adopt that one which conforms more to the presumed meaning, because it does not produce unusual and unjust results. All this is subject, however, to the inflexible rule that the intention must be gathered from the entire instrument "after looking," as the phrase is, "at the four corners of it," ' " citing a wealth of authorities.

In *Woody v. Gates,* 213 N. C., 792 (794), is the following: "In *Williams v. R. R.,* 200 N. C., 771, 158 S. E., 473, *Adams, J.,* speaking for the Court, states the principle as follows: 'Where a grantor executes a deed in proper form intending to convey his right, title and interest in land, and the grantee expects to become vested with such estate, the deed, although it may not contain technical covenants of title, is binding on the grantor and those claiming under him, and they will be estopped to deny that the grantee became seized of the estate the deed purports to convey.' To the same effect is *Crawley v. Stearns,* 194 N. C., 15, 138 S. E., 403." *Hallyburton v. Slagle,* 132 N. C., 947 (952); *Weeks v. Wilkins,* 139 N. C., 215.

In 19 Amer. Jurisprudence, sec. 18, p. 617, it is written: "Most courts in the United States have acceded to the position adopted by the Supreme Court that if the intention of the parties to a conveyance is to convey a fee or some other estate of a particular interest or quality, such intention will be given preëminent consideration and the grantor will be estopped to assert an after-acquired title, in spite of the absence of a covenant of warranty. Only a few courts cling to the position that a warranty, express or implied by statute, is essential to effect an estoppel. It is considered unnecessary that there be a formal covenant of warranty to estop the grantor in a deed from setting up against his grantee an after-acquired title and that a deed be given that effect if it sets forth by way of recital or averment that it is to operate as an absolute deed in fee," etc. *Van Rensselaer v. Kearney,* 11 Howard U. S., 297, 13 Law Ed., 703.

We have set forth the conduct of George W. Edwards in relation to

this $10,000 bond. For years, as secretary and treasurer of the Bolich Holding Corporation, of which Bolich was president, he had dealings with Bolich. He purchased $43,500 preferred stock in said corporation. The Bolich Holding Corporation, of which he was secretary and treasurer, was liable for the payment of the indebtedness of $60,000, which it had assumed. No mention was made by him for years of this bond of Doris M. Burke, assigned without recourse to Bolich and which he held with other collateral to secure Bolich's $10,000 bond to him. No evidence that any attempt was made to collect the bond from Bolich or to sell any of the other collateral to pay the bond, which at the time was valuable. Bolich said, "I considered this note (bond) paid and apparently forgot about it."

J. H. McKeithan, a practicing attorney in North Carolina, associated with Parrish & Deal, Attorneys, testified, in part: "I investigated the title to the L-shaped Bowling Alley lot on which the Shenandoah Life Insurance Company, Inc., deed of trust was given. . . . I reported that upon the discharge of the release of the L-shaped Bowling Alley lot from the operation of the deed of trust held by the Millers and Burkes, and the payment of taxes and assessments that the deed of trust to the Shenandoah Life Insurance Company, Inc., would constitute a first lien on the property described in it. . . . At the time of looking up this title and making the certificate I had no knowledge of a transaction occurring in April, 1930, between Mr. Bolich and Mr. Edwards and Mrs. Burke, whereby Mrs. Burke's bond was assigned by Mr. Bolich to Mr. Edwards."

The attorney relied on the agreement under seal and also on an affidavit made by J. A. Bolich, Jr., as to the balance due which did not include this $10,000. J. P. Saul, Jr., vice president and general counsel of the Shenandoah Life Insurance Company, Inc., testified, in part: "This check represents the loan of $60,000 made by the Shenandoah Life Insurance Company, Inc., to Mr. Bolich, evidenced by the deed of trust recorded in Deed of Trust Book 277, at page 53, in the office of the register of deeds of Forsyth County. At the time this loan was made the Shenandoah Life Insurance Company, Inc., caused an examination to be made of the title to the property covered by the deed of trust recorded in Deed of Trust Book 277, at page 53. The Shenandoah Life Insurance Company, Inc., made this loan upon the belief that this deed of trust constituted a first lien. The officials of the Shenandoah Life Insurance Company, Inc., had knowledge of the quitclaim deed recorded in Deed Book 330, at page 15, before making this loan. We relied upon this quitclaim deed in making the loan. We were furnished, by counsel investigating the title for us, with an affidavit or certificate executed by J. A. Bolich, Jr. . . . Tract 1 in the deed of trust to

E. Lee Trinkle, J. A. Andrews and J. P. Paul, Jr., trustees, is the L-shaped Bowling Alley lot. The lien of this deed of trust was presumably a first lien upon Tract 1, which is the L-shaped Bowling Alley lot, and a second lien upon the other two tracts mentioned in that deed of trust. Tracts 2 and 3 have been foreclosed under prior liens. It is my understanding that Mr. Bolich turned over to our local attorneys the sum of $60,000 to be disbursed and that those attorneys disbursed the sum of $60,000 representing this loan. As one of the surviving trustees in this deed of trust, I conducted a foreclosure sale. At this sale the Shenandoah Life Insurance Company, Inc., became the purchaser of the L-shaped Bowling Alley lot. . . . At the time the Shenandoah Life Insurance Company, Inc., foreclosed its deed of trust on the L-shaped Bowling Alley lot, there was something in excess of $80,000 due on the mortgage. The payments made on the note (or bond) had not been sufficient to keep up interest and taxes and insurance. This property was bid in in January, 1938, by the Shenandoah Life Insurance Company, Inc., for $40,000. The Shenandoah Life Insurance Company, Inc., has no other security for this debt. When this loan was made we were furnished by Parrish & Deal, attorneys at law of Winston-Salem, with an abstract of title. In that abstract of title the deed recorded in Deed Book 330, at page 15, was referred to."

The defendants in their brief say: "The plaintiff had actual notice through its attorneys that the note (or bond) was outstanding. The argument about to be made is not regarded by the authors of this brief as essential to the determination of this case. The argument is advanced as an additional reason why the defendants should prevail." From the facts in this case, we do not think that plaintiff had such actual notice that would affect plaintiff's rights. *Arrington v. Arrington,* 114 N. C., 151; *Wood v. Trust Co.,* 200 N. C., 105.

Under all the facts of the record, written and *in pais,* it would be inequitable, unjust and unconscionable for Maude Miller to recover from plaintiff the bond in controversy. She is estopped and the charge of the judge of Forsyth County Court was correct—there was no error in the judgment of the Superior Court.

For the reasons given, the judgment is

Affirmed.