THE STEPHENS COMPANY v. MARY PARKER LISK AND HUSBAND,
C. D. LISK.

(Filed 19 May, 1954.)

**1. Deeds § 16a—**

Where a deed contains a covenant on the part of the grantee for himself,
his heirs and assigns, agreeing to pay a proportionate part of the cost of
improvements which the grantor or its successors or assigns might make
along the street abutting the property, *held:* The grantee is the covenantor
and by accepting the deed binds himself and his assigns to the agreement
as a covenant running with the land. Therefore the covenant is enforceable
by the grantor against a subsequent purchaser of the land from such
grantee.

**2. Deeds § 11—**

A deed must be construed to ascertain and effectuate the intention of
the parties as gathered from the language of the entire instrument.

**3. Same: Contracts § 8—**

While punctuation is ineffective as against the plain meaning of the
language used by the parties to a contract or other instrument in writing,
still the rules of punctuation may be used to assist in determining the
intent of the parties.

**4. Deeds § 16a—**

The deed in question contained a covenant binding the grantee and his
heirs and assigns to pay *pro rata* part of street improvements "in the event
the party of the first part, or its successors or assigns, owner or owners of a
major portion of the lots in said block" should decide to grade, pave, or
otherwise improve the abutting streets. *Held:* The intent of the parties,
clarified by the punctuation, was that the grantor was authorized to make
improvements without the consent of a majority of the owners of lots in
said block, and the consent of the owners of a majority of the lots in said
block was required only in the event the grantor's successors or assigns
undertook to make the improvements.

APPEAL by defendants from *Phillips, J.,* at 4 January, 1954, Extra
Civil Term of MECKLENBURG.

Civil action to recover on contract set forth in certain deed, as herein-
after shown, for paving, and to have same declared a lien on certain prop-
erty of defendant in city of Charlotte, N. C., heard upon stipulation of
parties by which a jury trial was waived, and consent given that court
pass upon and find the facts as well as determine the law in the case.

Thereupon the parties agreed that the following constitute the facts, and all the evidence upon which the case is to be tried:

"(a) The allegations set forth in paragraphs 1, 2, 3 and 4 of the complaint are admitted. (These are the allegations.)

" '1. The plaintiff, a North Carolina corporation, was duly organized under the laws of the State of North Carolina, and in the Spring of 1951 it was dissolved and this action is brought by the Directors and Trustees in Dissolution of the plaintiff.

" '2. That the defendants are citizens and residents of Mecklenburg County, North Carolina, and the defendant, C. D. Lisk, is the husband of Mary Parker Lisk.

" '3. That the defendant, Mary Parker Lisk, is the owner of a certain tract of land, being part of Lot 34 and of Lot 35 in Block 80 of Myers Park as shown on the map thereof recorded in Map Book 3, Page 470, Mecklenburg Registry, said property fronting 102.35 feet on the easterly side of Maryland Avenue, said property having been conveyed to the defendant Mary Parker Lisk (formerly Mary Parker Herring) and her former husband, L. O. Herring (now deceased) by two deeds—one from T. L. Kirkpatrick and wife, Eva C. Kirkpatrick, dated March 9, 1934, and registered in Book 1114, page 303, and the other from Troy Whitehead and wife, Dorothy West Whitehead, dated September 12, 1945, registered in Book 1158, page 206 in the office of the Register of Deeds for Mecklenburg County.

" '4. That The Stephens Company was the developer of Myers Park and caused the aforementioned map of Block 80 to be recorded.'

"(b) There is incorporated in this stipulation map of Block 80 of Myers Park recorded in Map Book 3, page 470, in the office of the Register of Deeds for Mecklenburg County and the revised map thereof which appears in Map Book 6, page 357.

"(c) The property of the defendant, Mrs. Mary Parker Lisk, referred to in paragraph 3 of the complaint was originally conveyed by The Stephens Company by two deeds, one to D. A. Matthews and wife, Nell Anderson Matthews, dated June 1, 1935, and registered in Book 869, page 110, and the other to J. E. Elrod and wife, Annette M. Elrod, dated June 21, 1935, and registered in Book 877, page 296, in the office of the Register of Deeds for Mecklenburg County. In each of said deeds the following provision is contained:

" 'The above described property is conveyed as unimproved property without any obligation on the part of the grantor to improve same or the streets in or adjacent to said block, or to put in water or sewer lines or other conveniences for the benefit of said property, and nothing has been included in the purchase price to cover any such improvement. It is, therefore, covenanted by the parties of the second part for themselves,

their heirs and assigns, that in the event the party of the first part, or its successors or assigns, owner or owners of a major portion of the lots in said Block 80 facing on the proposed Maryland Avenue should decide to grade, pave or otherwise further improve the streets or sidewalks in or adjacent to said block, or to put in water or sewer lines or other improvements, the property hereby conveyed shall bear its part of the cost of said improvements, based upon frontage of the property so improved, or where a corner lot is involved, the cost of such improvement will be based upon frontage and side of the lot so improved; and if any grading in streets or sidewalk, it shall be proper to construct a fill or cut the slope of which shall encroach upon said property, the party of the first part, its successors or assigns, shall have and are hereby given the right to make the necessary encroachments for such purpose. This covenant shall run with the land, and the cost of improvements above referred to shall be a charge upon the same in whosever hands it shall be at the time of said improvements.'

"(d) In the Spring of 1950 the plaintiff caused Maryland Avenue along Block 80 to be graded and paved, providing water and sewer lines. At the time this was done the plaintiff was the owner of approximately 22% of the lots in Block 80 facing on Maryland Avenue, the remainder, or 78%, of said lots having previously been conveyed by the plaintiff. In the deeds conveying this 78% of said lots, an identical provision was contained in each deed as was contained in the aforementioned deeds registered in Book 869, page 110, and Book 877, page 296, hereinbefore referred to. At the time the plaintiff caused Maryland Avenue to be so improved, it did not consult with or obtain the prior consent of any of the owners of the 78% of said lots.

"(e) At the time Maryland Avenue was so improved the plaintiff was the owner of all of the property directly across Maryland Avenue from Block 80 of Myers Park, as shown on the map thereof recorded in Map Book 3, page 470, Mecklenburg Registry.

"(f) Based upon the entire cost of said improvements to Maryland Avenue adjacent to Block 80 of Myers Park, the costs of such improvements adjacent to the property of the defendant, Mary Parker Lisk, was $513.79, or $4.976 per foot.

"(g) The plaintiff paid for all of said improvements to Maryland Avenue and the defendant, Mary Parker Lisk, has paid the plaintiff nothing on account thereof."

Thereupon, the court finding the facts to be as above set forth, and concluding that the property of defendant, Mary Parker Lisk, described in the complaint, is chargeable with the sum of $513.79, entered judgment (1) in accordance therewith, (2) that the judgment be declared to be a lien upon said property, and (3) that to this extent plaintiff have judg-

ment against said defendant, together with the costs. And the court further appointed a commissioner to sell, and authorized sale of the property, etc.

Defendants except thereto, and appeal to Supreme Court and assign error.

*Cochran, McCleneghan & Miller for plaintiff, appellee.*
*G. T. Carswell and James F. Justice for defendants, appellants.*

WINBORNE, J. This is the question for decision here: Did the trial court err in concluding as a matter of law that, upon the stipulated facts, the property of *feme* defendant, described in the complaint, is chargeable for its proportionate share of the cost of improving Maryland Avenue as set forth in the judgment from which appeal is taken?

This is a question of law determinable by proper interpretation of the wording of the covenant as written in the deeds under which *feme* defendant acquired title to the lots constituting the property described in the complaint.

A covenant, as stated by *Battle, J.,* in *Kent v. Edmondson,* 49 N.C. 529, is defined to be "the agreement or consent of two or more, by deed in writing, sealed and delivered; whereby, either, or one of the parties, doth promise to the other, that something is done already, or shall be done afterwards. And he that makes the covenant is called the covenantor, and he to whom it is made, the covenantee."

Moreover, a conveyance of land with covenant on the part of the grantee, for himself, his heirs and assigns, such as in the case in hand, is a binding covenant running with the land, and is enforceable. *Ring v. Mayberry,* 168 N.C. 563, 84 S.E. 846. Indeed, in the *Ring case, Clark, C. J.,* speaking of a covenant running with the land, had this to say: "Aside from the express averment of the creation of the easement, the acceptance of the deed containing a covenant on the part of the grantee is equivalent to the grant of an easement by the defendant. Such covenants run with the land and are not at all unusual. They are good even against assignees in fee where the intention to create them is clear"— citing C.Y.C., and *Norfleet v. Cromwell,* 64 N.C. 1.

The covenant involved in this appeal is made expressly by the grantees, "the parties of the second part for themselves, their heirs and assigns," and it is expressly stated that "this covenant shall run with the land, and the cost of improvements above referred to shall be a charge upon the same in whosoever hands it shall be at the time of said improvements."

Hence by the acceptance of the deed containing the covenant, the grantees, for themselves, their heirs and assigns, became the covenantors, and those to whom the covenant is made the covenantees. And the obli-

gations assumed by the grantees in the covenant made are binding upon their assigns. The *feme* defendant is an assignee of the grantees, and the covenant made runs with the land, as expressly set forth.

And decisions of this Court uniformly hold that the courts are required to interpret a deed so as to ascertain and effectuate the intention of the parties as gathered from the entire instrument. In *Gudger v. White,* 141 N.C. 507, 54 S.E. 386, the Court, treating the subject of interpreting a deed, in opinion by *Walker, J.,* declared: "We are required by the settled canon of construction so to interpret it as to ascertain and effectuate the intention of the parties. Their meaning, it is true, must be expressed in the instrument; but it is proper to seek for a rational purpose in the language and provisions of the deed and to construe it consistently with reason and common sense. If there is any doubt entertained as to the real intention, we should reject that interpretation which plainly leads to injustice and adopt that one which conforms more to the presumed meaning, because it does not produce unusual and unjust results. All this is subject, however, to the inflexible rule that the intention must be gathered from the entire instrument 'after looking' as the phrase is, 'at the four corners of it.' "

This rule, variously expressed, is followed throughout subsequent decisions of this Court,—among which are these: *Featherston v. Merrimon,* 148 N.C. 199, 61 S.E. 675; *Triplett v. Williams,* 149 N.C. 394, 63 S.E. 79; *Price v. Griffin,* 150 N.C. 523, 64 S.E. 372; *Thomas v. Bunch,* 158 N.C. 175, 73 S.E. 899; *Acker v. Pridgen,* 158 N.C. 337, 74 S.E. 335; *Williamson v. Bitting,* 159 N.C. 321, 74 S.E. 808; *Eason v. Eason,* 159 N.C. 539, 75 S.E. 797; *Jones v. Sandlin,* 160 N.C. 150, 75 S.E. 1075; *Beacom v. Amos,* 161 N.C. 357, 77 S.E. 407; *Spencer v. Jones,* 168 N.C. 291, 84 S.E. 261; *Whichard v. Whitehurst,* 181 N.C. 79, 106 S.E. 463; *Ins. Co. v. Sandridge,* 216 N.C. 766, 6 S.E. 2d 876; *Lee v. McDonald,* 230 N.C. 517, 53 S.E. 2d 845.

In the *Spencer case, supra,* it is stated that "this doctrine applies to a covenant as to other contracts, and the intention of the parties, if discernible, will control in determining its meaning, which should be gathered from the entire instrument." And in the *Lee case, supra, Denny, J.,* writing for the Court, said, "the intent of the grantor in a deed . . . must be gathered from its four corners . . ."

And while punctuation is ineffective as against the plain meaning of the language used by the parties to a contract or other instrument of writing, still the rules of punctuation may be used to assist in determining the intent of the parties. 3 A.L.R. 1062 Annotation—Subject Punctuation as affecting construction of contract. *Allen v. U. S. F. & G. Co.,* 269 Ill. 234, 109 N.E. 1035; *S. v. Bell,* 184 N.C. 701, 115 S.E. 190.

In the *Bell case, supra,* the Court was interpreting a statute, and speaking through *Adams, J.,* said: "This we think is the rational interpretation . . . in accord not only with the spirit and reason of the law, but with the phraseology and punctuation. Punctuation, we admit, is not an infallible standard of construction; indeed some courts have held that it should be disregarded . . . But this is not the prevailing doctrine. In *Taylor v. Town,* 10 A. & E. Anno. Cas. 1082, it is said: 'There is no reason why punctuation, which is intended to and does assist in making clear and plain all things else in the English language, should be rejected in the case of interpretation of statutes. *Cessante ratione legis, cessat ipsa lex.'* "

Now in the light of these principles, we turn to the present case: The record of case on appeal does not incorporate the deeds here involved. But it is stated in the stipulation of facts that defendant Mary Parker Lisk is the owner of a certain tract of land, being part of Lot 34 and of Lot 35 in Block 80 of Myers Park as shown on the map thereof recorded in Map Book 3, page 470, Mecklenburg Registry, said property fronting 102.35 feet on the easterly side of Maryland Avenue, the same having been conveyed to her and her former husband by two certain deeds; that The Stephens Company was the developer of Myers Park, and caused the map of Block 80 of Myers Park to be recorded; and that the property of defendant, Mark Parker Lisk, was originally conveyed by The Stephens Company by two certain deeds, each of which contained the covenant hereinabove quoted.

In the light of these facts we look to the covenant: At the outset the premise of the covenant makes it clear that the parties mutually understood that the lots were conveyed as unimproved property without any obligation on the part of the grantor, The Stephens Company, to improve same or the streets in or adjacent to Block 80, or to put in water or sewer lines or other conveniences for the benefit of the property, and that nothing had been included in the purchase price to cover any such improvement. Since The Stephens Company was developing Myers Park, of which Block 80 was a part, and since Maryland Avenue, on which the lots faced, was proposed, it seems natural that the above common understanding should be expressed.

Moreover, it clearly appears from the plain language of the covenant that in the event the party or parties authorized so to do "should decide to grade, pave or otherwise further improve the streets or sidewalks in or adjacent to said block, or to put in water or sewer lines or other improvements, the property conveyed shall bear its part of the cost of said improvements, based upon the frontage of the property so improved . . . and the cost of improvements . . . be a charge upon the same (land) in whosoever hands it shall be at the time of said improvements."

Now, then, we focus attention to this portion of the covenant: ". . . that in the event the party of the first part, or its successors or· assigns, owner or owners of a major portion of the lots in such Block 80 facing on the proposed Maryland Avenue should decide to . . . improve the streets . . . or to put in water . . . improvements, the property hereby conveyed shall bear its part of the cost . . ." The plaintiff, who is "the party of the first part," made the decision. And the effect of the judgment below is that it had the right so to do.

Defendants contend, on the other hand, that under the wording of the covenant, "the consent of the owner or owners of a majority of the lots in Block 80" was required.

Who, then, was given the right to make decision? To answer this question it is necessary to ascertain from the language used what was the intention of the parties at the time the covenant was made.

Reading the language, as it is phrased and punctuated, it seems clear that there are alternate classes of subjects of the sentence, one, "the party of the first part," and the other, "its successors or assigns, owner or owners of a major portion of the lots in such Block 80 facing on the proposed Maryland Avenue."

Grammarians say ordinarily put a comma before clauses introduced by such conjunctions as "and," "but," "or," "nor," if a change of subject takes place. But that such connectives between words or phrases used in conjunction do not require a comma. Therefore, the comma after the words "the party of the first part" and before the next word "or" correctly separates "the party of the first part" as one class, from the class which follows.

The grammarians also hold that "for parenthetical, adverbial, or appositional clauses or phrases, use commas to indicate structurally disconnected, but logically integral, interpolations." Hence, applying this rule, the comma after the words "its successors or assigns" and before the clause beginning "owner or owners" clearly indicates that the latter is appositional to the words "its successors or assigns." Thus the punctuation seems to be accordant with good English grammar. Indeed, it makes clear and plain the language used. And it appears to be a rational interpretation. For in the light of the phraseology, as punctuated, we have these alternates: (1) "in the event the party of the first part . . . should decide to grade . . ."; and (2) "in the event . . . its successors or assigns, owner or owners of a major portion of the lots in said Block 80 facing on the proposed Maryland Avenue should decide to grade . . ." Therefore the punctuation, having been properly used, must have been intended to assist in making clear and plain what the covenantors intended. Manifestly the covenantee, The Stephens Company, so understood it.

Finally, it is not amiss to observe that the findings of fact fail to show (1) that defendants made any complaint when The Stephens Company was making the improvements, or (2) that the amount of cost of the improvement sought to be recovered in this action is not the part of the cost allocable to the lots of defendants in accordance with the provisions of the covenant. Indeed it is agreed that it is the amount. Therefore no injustice appears.

The judgment below is

Affirmed.